**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| SUSAN CROPPER, et al., | **:** | |
| | **:** | |
| v. | **:** | Civil No. CCB-05-2300 |
| | **:** | |
| BOARD OF EDUCATION OF WORCESTER | **:** | |
| COUNTY, et. al. | **:** | |

**MEMORANDUM**

Now pending before the court is defendant Darrell Birckett's motion to dismiss. The issues have been fully briefed and no hearing is necessary. Local Rule 105.6. For the reasons that follow, the defendant's motion will be denied.

**BACKGROUND**

Plaintiffs, at the relevant times all public school teachers at Berlin Intermediate School,[1] assert both Title VII and §1983 claims against various officials and employees of the Worcester County public school system, including its Superintendent and the Board of Education itself. (*See* Complaint at ¶ 3.) Relevant to this motion to dismiss, however, is only defendant Darrell Birckett ('Birckett'), the employee alleged to have perpetrated the discriminatory acts underlying the charges against all the defendants. The court, therefore, will limit its discussion to the facts relevant to Birckett's alleged actions.

According to the complaint, Birckett is employed by the Worcester County public school system as a Pupil Services Worker and is assigned to a program providing counseling and other support services for emotionally troubled youth. (*Id*. at ¶ 9.) During the 2003-2004 school year,

---

[1] Ms. Nastalski was a student teacher during the 2003-2004 school year only and was not employed by the school district thereafter.

however, the period of time during which the discriminatory acts are alleged to have occurred, he was the vice-principal of Berlin Intermediate School and served as plaintiffs' front-line supervisor. (*Id*.)  Plaintiffs allege that over the course of the 2003-2004 school year, Birckett engaged in a continuous course of conduct in which, *inter alia*, "he made unwelcome sexual advances to plaintiffs...touched female employees...inappropriately, made sexually suggestive gestures...told jokes and stories of a sexually offensive nature...and made unprofessional statements...that were at times sexually suggestive and at times explicitly sexual and even obscene." (*Id*. at ¶ 13.)

In one alleged incident, Birckett "summoned Ms. Nastalski to his office" and questioned her about the length of her skirt.  When Ms. Nastalski responded by indicating that she thought it was long enough to be the appropriate length, Birckett allegedly told her "it isn't short enough." (*Id*. at ¶ 19.)  At another point, after Birckett's behavior allegedly became pervasive and intolerable, plaintiff Dr. Feagans confronted Birckett and stated that his mistreatment had eroded her morale to the extent she no longer felt like teaching at the school.  Dr. Feagans alleges that Birckett immediately responded, "I take it you are reconsidering your employment at this school?," and angrily glared at her.  Dr. Feagans asserts that his demeanor during that interaction convinced her that Birckett intended to retaliate against her, as opposed to reforming his ways. (*Id*. at ¶ 29-30.)  It is also alleged that the other defendants, all individuals in varying positions of authority over Birckett, failed to take corrective action of any kind, despite being repeatedly informed of his conduct. (*Id*. at ¶ 43.)[2]

---

[2] The specific incidents cited are but a few of the alleged acts.  Other allegations include Birckett's "pinching" of one plaintiff's posterior, sticking his tongue out at plaintiffs in a lewd and obscene manner, caressing one plaintiff's back and elbow, commenting on a plaintiff having

## ANALYSIS

The defendant does not challenge that what is alleged amounts to actionable sexual

harassment.  Rather, for the purposes of this motion to dismiss, Birckett argues that he was not

"acting under the color of state law" as required to make out a § 1983 claim and that, therefore,

the claims against him must be dismissed.[3]  Specifically, Birckett contends that plaintiffs make

only conclusory and unsupported assertions and that, in any event, the facts alleged fail to

establish that Birckett was acting under the color of state law.  Finally, Birckett also argues that

the § 1983 claims against him in his official capacity should be dismissed because he is an

unnecessary and redundant party in light of the Board of Education of Worcester County's

presence as a defendant in this suit.

### A. Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint;

importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of

a claim, or the applicability of defenses."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th

Cir. 1999) (internal quotation marks and alterations omitted).  When ruling on such a motion, the

court must "accept the well-pled allegations of the complaint as true," and "construe the facts

and reasonable inferences derived therefrom in the light most favorable to the plaintiff."  *Ibarra*

---

sex with her boyfriend, placing his hand on the inside of one plaintiff's thigh, asking a plaintiff
to kiss him, cornering and intimidating a plaintiff in an office, and warning one plaintiff that he
would "come and find her" outside of the school if she did not return his calls.

[3]  Title 42 U.S.C.A. § 1983 states: "Every person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,
subjects, or causes to be subjected, any citizen of the United States or other person within the
jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured in an action at law..."

*v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  Consequently, a motion to dismiss under

Rule 12(b)(6) may be granted only when "it appears beyond doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355

U.S. 41, 45-46 (1957); *see also Edwards*, 178 F.3d at 244.  In addition, because the court is

testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal

conclusions.  *See e.g.*, *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) (noting

that the "presence . . . of a few conclusory legal terms does not insulate a complaint from

dismissal under Rule 12(b)(6)" when the facts alleged do not support the legal conclusions);

*Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995) (affirming Rule 12(b)(6) dismissal with

prejudice because the plaintiff's alleged facts failed to support her conclusion that the defendant

owed her a fiduciary duty at common law).[4]

It is clear that, except in very limited circumstances not present here, the "Federal Rules

of Civil procedure do not require a claimant to set out in detail the facts upon which he bases his

claim," *Conley*, 355 U.S. at 47 , and that Rule 8(a)(2) requires only a "short and plain statement

of the claim showing that the pleader is entitled to relief." *See Swierkiewicz v. Sorema N.A.*, 534

U.S. 506, 513 (2002)(stating that a complaint need only satisfy the "simplified pleading

standard" of Rule 8(a)). The Fourth Circuit, however, in *Bass v. E.I DuPont De Nemours &*

*Company*, 324 F.3d 761, 765 (4th Cir. 2003), upheld dismissal of a Title VII claim under Rule

12(b)(6) finding that the plaintiff failed to allege facts sufficient to support two of the four *prima*

---

[4] Birckett stresses that the court does not have to accept as true the plaintiffs' legal conclusions.  The alleged underlying facts supporting those conclusions, however, are to be taken as true. *See Eastern Shore Mkts. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir.2000).

*facie* elements necessary to her hostile work environment claim. The court explained, "[w]hile a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff *is* required to allege facts that support a claim for relief." *Id*. Despite the apparent tension between *Bass* and *Swierkiewicz*, this court is bound to follow the Fourth Circuit's interpretation of *Swierkiewicz. See Cockerham v. Stokes Cnty. Bd. of Educ.*, 302 F.Supp.2d 490, 496 (M.D.N.C. 2004). The question to be resolved here is whether the plaintiffs have alleged facts sufficient to support a finding that Birckett acted under the color of state law.

B. *"Under color of state law"*

Birckett argues that, even based on the plaintiffs' own allegations, it cannot be said that he was acting under color of state law when he engaged in sexual harassment of the plaintiffs. Generally, a public employee "acts under the color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (1988). Being an employee of the state alone, however, is insufficient to show that a defendant acted under color of state law. *See Polk County v. Dodson*, 454 U.S. 312, 321(1981). Rather, where the defendant misused power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law," he or she can be said to have acted under color of state law. *See United States v. Classic*, 313 U.S. 299, 326 (1941). When the defendant "abuses the position given to him by the state," the standard is met. *West*, 487 U.S. at 50.  In other words, if the actions complained of were committed while the defendant was "purporting to act under the authority vested in [him] by the state..." or were "otherwise made possible because of the privileges of [his] employment," the defendant can be said to have acted under color of state law.  *See Hughes v. Halifax Cnty. School Brd.*, 855 F.2d 183, 186-87

(4th Cir. 1988).

That a defendant has supervisory authority over the plaintiff often satisfies § 1983's "under color of state law" requirement.  Courts have also recognized, however, that a co-worker could act under color of state law even without officially having supervisory status. *See Bonenberger v. Plymouth Twnshp.*, 132 F.3d 20, 23 (3rd Cir. 1997)("There is simply no plausible justification for distinguishing between abuse of state authority by one who holds the formal title of supervisor...and...one who bears no such title but whose regular duties nonetheless include a virtually identical supervisory role."); *and David v. City and Cnty. of Denver*, 101 F.3d 1344, 1354 (10th Cir. 1997)("We note that in certain instances co-employees may exercise de facto authority over sexual harassment victims such that they act under color of law."). Moreover, while some actions of government employees have been deemed purely private pursuits, and thus not done under color of state law, *see Bailey v. Prince George's Cnty*, 34 F.Supp.2d 1025, 1027 (D.Md. 1999),[5] that a defendant ostensibly acts in pursuit of his own interests does not end the inquiry.  Private actions and pursuits may be made possible by the privileges of one's employment. *See Hughes*, 855 F.2d at 186-87; *see also Rossignol v. Voorhaar*, 316 F.3d 516, 524 (4th Cir. 2003)("...if a defendant's purportedly private actions are linked to events which arose out of his official status, the nexus between the two can play a role in establishing that he acted under color of state law"); *and Walker v. Taylorville Correctional*

---

[5] *Bailey*, relied on by Birckett, involved an argument between two co-workers. One co-worker, Bailey, was a civilian administrative assistant at the police department and the other was a lieutenant on the force.  The officer was not Bailey's supervisor, exercised no control over her whatsoever, and did not even work in the same building. There, the court found the argument to be a purely personal interaction in which the officer "did not arrest or threaten to arrest or even lay a hand on Bailey."  *Bailey*, 34 F.Supp.2d at 1028. The court did not find any evidence of the officer's actions being made possible by the privileges of her employment.

*Center*, 129 F.3d 410, 413-14 (7th Cir. 1997)(cautioning that "whether or not she then took the alleged actions 'in pursuit of her own interests,' she was able to do so solely because of the position of authority she enjoyed...[and] thus [the] allegations were sufficient...to satisfy the state action element of the § 1983 claim.").

Moreover, courts have recognized that, even absent explicit exercise of any present authority, a defendant's position might be the very source of power that emboldens him to behave in a discriminatory or harassing manner and allows him to get away with it.  *See Rossignol*, 316 F.3d at 525-26 (noting that the defendants' status helped shield them from the consequences of their actions and intimidate others without having to make any explicit threats); *see also Monsky v. Moraghan*, 127 F.3d 243, 246 ("Though he is not alleged to have explicitly asserted his authority, the allegations permit the inference that...staff tolerated the alleged conduct [because he] implicitly invoked the power and prestige of his office.").  This recognition is significant.  While individual motivations can differ, sexual harassment is, at bottom, about power.  *See, e.g.,* Marcy Strauss, *Sexist Speech in the Workplace*, 25 Harv. C.R-C.L. L. Rev. 1, 14 n. 52 (1991)("sexual harassment is an issue of power more than of sex").

Here, plaintiffs have pled that Birckett was the vice-principal of Berlin Intermediate School and served as plaintiffs' front-line supervisor during the 2003-2004 school year, the period of time during which the alleged acts occurred. (*See* Complaint at ¶ 9.)[6]  While not dispositive, that Birckett held such a position of authority is significant.  Birckett argues,

---

[6] It is unclear whether Birckett contests that he in fact held that position. Even if he did not have direct supervisory authority over the plaintiffs, he might nonetheless exercise sufficient power to be acting under color of state law. *See Bonenberger*, 132 F.3d at 23; *see also David*, 101 F.3d at 1354.

however, that the alleged harassment was a purely private pursuit unconnected with the
execution of his official duties and unrelated to his supervisory position.  First, even if Birckett
was pursuing his own interests, that does not settle the matter, as few acts of sexual harassment
will fairly be characterized as consonant with the organization's interests.  *See, e.g.,  Walker*, 129
F.3d at 413-14 (cautioning that "whether or not she then took the alleged actions 'in pursuit of
her own interests,' she was able to do so solely because of the position of authority she
enjoyed.").

Second, not all of Birckett's actions are necessarily so untethered from his position of
authority as he suggests.  For example, Birckett's summoning of  Ms. Nastalski to his office to
"question" her about the length of her skirt, and the fact that she came to his office and felt
compelled to respond professionally to his "inquiry," suggests his authority may have played a
role. (*See* Complaint at ¶ 19.)  While Birckett attempts to characterize the various incidents as
examples of where the job merely allows a defendant frequent contact with the plaintiffs, *see
Segreto v. Kirschner*, 977 F.Supp. 553, 557 (D.Conn. 1997), this does not appear to be the type
of interaction which, for example, the school custodian could compel the plaintiffs to endure.
*Compare Jojola v. Chavez*, 55 F.3d 488, 493-94 (10th Cir. 1995)(dismissing § 1983 claim
against school custodian because the defendant did not act under color of state law).
Additionally, the interaction with Dr. Feagans, where Birckett immediately responded to her
complaints by saying, "I take it you are reconsidering your employment at this school," could
reasonably raise adequate inferences of misuse of authority in light of his position as a vice-
principal. (*See* Complaint at ¶ 29-30.)

Finally, the allegations that the other defendants, all individuals in varying positions of

authority over Birckett, failed to take corrective action of any kind, despite being repeatedly

informed of his conduct, imply that his ability to escape any corrective action was, at least in

part, a function of his status and authority.  In summary, whether or not Birckett ever had to

specifically invoke his authority or explicitly exercise his power, it is reasonable to find that his

status as vice-principal may have emboldened him to behave in a harassing manner and allowed

him to avoid correction over the 2003-2004 school year. *See Rossignol*, 316 F.3d at 525-26

(noting that the defendants made no explicit threats); *see also Monsky*, 127 F.3d at 246.

Plaintiffs have alleged that Birckett was in a position of supervisory authority and have

put forth factual allegations sufficient to support an inference that his harassing actions were

"made possible because of the privileges of [his] employment." *See Hughes*, 855 F.2d at 186-

87.[7]  Dismissal at this stage is not appropriate.  *See, e.g., Bonenberger*, 132 F.3d 20, 23 (citing

*Poulsen v. City of North Tonawanda*, 811 F.Supp. 884, 895 (W.D.N.Y. 1993).  For the foregoing

reasons, the defendant's motion to dismiss the claims against him will be denied.[8]

---

[7] Birckett also contends that, even if some of the factual allegations are sufficient to state
a claim that he abused his authority, the court should dismiss the claims brought by any of the
plaintiffs who are not specifically implicated in those incidents found to be sufficient. It should
be noted that the defendant raises this argument for the first time in a footnote in his reply to the
plaintiffs' opposition to the motion to dismiss. In any event, the argument goes too far.  Even
under the Fourth Circuit's pleading standard as stated in *Bass*, 324 F.3d at 765, there is no
obligation to identify in the complaint all the evidence that may later be offered in support of the
claim. *See Conley v. Gibson*, 355 U.S. 41, 47 (1957); s*ee also Gorski v. New Hampshire Dept. of
Corrections*, 290 F.3d 466, 474 (1st Cir. 2002)(reversing the district court because it wrongly
treated the set of facts and incidents which the plaintiff pled to show discrimination as the only
evidence that existed).

[8] Birckett also argues that the § 1983 claims against him in his official capacity should be
dismissed because he is an unnecessary and redundant party. In light of the court's decision
today, Birckett will be remaining in the case.  Accordingly, there is no need to address the
defendant's official capacity argument at this time.

A separate order follows.


____November 29, 2005____                    _____/s/_____
Date                                         Catherine C. Blake
                                             United States District Judge